**NATIONAL LABOR RELATIONS BOARD, Petitioner–Cross–Respondent,**

**and**

**The New York Hotel And Motel Trades Council, AFL–CIO, Intervenor,**

v.

**The STATEN ISLAND HOTEL LIMITED PARTNERSHIP, d/b/a The Staten Island Hotel, Respondent–Cross–Petitioner.**

Nos. 870, 1185, Dockets 96-4045(L), 96-4063.

United States Court of Appeals, Second Circuit.

Argued Nov. 18, 1996.

Decided Dec. 3, 1996.

Corinna L. Metcalf, Deputy Assistant General Counsel (Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Washington, DC, on the brief), for Petitioner–Cross–Respondent.

Barry N. Saltzman (Vincent F. Pitta, Richards & O'Neil, New York City, on the brief), for Intervenor.

Joseph S. Rosenthal (Jacqueline I. Meyer, Bondy & Schloss, New York City, on the brief), for Respondent–Cross–Petitioner.

Before: KEARSE, ALTIMARI and LEVAL, Circuit Judges.

PER CURIAM.

Petitioner National Labor Relations Board (the "Board") petitions for enforcement of its August 29, 1995 order finding that respondent Staten Island Hotel Limited Partnership (the "Company") violated §§ 8(a)(1), (3), and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3), and (5) (1994) (the "Act"), and requiring the Company principally (a) to hire former employees of Statland Holiday Associates ("Statland"), a predecessor employer, (b) to recognize and bargain with the New York Hotel and Motel Trades Council, AFL–CIO (the "Union"), as the exclusive collective-bargaining representatives of the employees, and (c) to pay those employees past and current wages and benefits, at the rates specified in their contract with Statland, until the Company negotiates in good faith with the Union to agreement or to impasse. The Company cross-petitions for review of the Board's order, contending principally (1) that the administrative law judge ("ALJ") impermissibly reopened the administrative hearing to receive additional evidence that was essential to any finding of unfair labor practices, (2) that there was not substantial evidence to support the Board's findings, and (3) that the Board's order for payment to the employees at the rates paid by Statland is punitive rather than remedial. For the reasons that follow, we grant the petition for enforcement and deny the cross-petition for review.

The Company acquired the hotel in 1994 from a receiver appointed when Statland became insolvent. Statland's employees had been represented by the Union. After purchasing the hotel, the Company advertised to solicit job applications, and eventually hired some of the former employees, although not enough to constitute a majority of its employees. The liability issues presented here concern the number of former employees whose applications were rejected by the Company and the Company's motivation for the rejections.

The administrative hearing was reopened by the ALJ *sua sponte* with respect to the question of how many applications from former employees the Company had received. The reopening was occasioned by an ambiguity that arose at the initial hearing. At that hearing, a former-employee witness called by the Board testified that she had mailed the Company an application and knew that it had been received because she had received a return receipt. At that point, the Company's counsel stated, "We stipulate that we received this woman's application." "We don't have to go through that trouble." "If you had given me a list of all of them and asked me to stipulate, I would have done that too." "The issue is not whether we received, the issue is whether or not we refused to consider hiring them." The Board put in no further proof as to applications submitted, believing from these statements that the Company did not dispute the

Board's view as to the number of former employees who had applied for jobs. After the hearing ended, however, the Company took the position that it had conceded only that it had received applications from former employees who possessed signed return receipts.

■ The ALJ is charged with "inquir[ing] fully into the facts as to whether the respondent has engaged in or is engaging in an unfair labor practice affecting commerce." 29 C.F.R. § 102.35(a). It is within the ALJ's powers to "dispose of procedural requests, motions, or similar matters ...; [and] to order hearings reopened." *Id.* § 102.35(a)(8). The grant or denial of a party's motion to reopen an administrative record is reviewable only for abuse of discretion. *See, e.g., NLRB v. Amalgamated Clothing & Textile Workers Union,* 662 F.2d 1044, 1045 (4th Cir.1981); *North American Soccer League v. NLRB,* 613 F.2d 1379, 1384 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 128 (1980). An ALJ's decision to reopen a record *sua sponte* must similarly be reviewed under an abuse-of-discretion standard.

■ In the present case, the statement by Company counsel at the hearing was more susceptible to the interpretation that the Company did not dispute that it had received all of the applications the Board contended had been submitted to it than to the Company's subsequent strained interpretation that it had conceded receipt only of those applications for which receipt could easily be proven. It was well within the discretion of the ALJ, in order to prevent the Company from profiting by the ambiguity it had created, to reopen the hearing to permit proof as to how many applications the Company had in fact received.

We note also that the Company thereafter refused to comply with a Board subpoena for information as to that number. The ALJ permissibly drew inferences adverse to the Company in light of that refusal.

■ Nor is there merit in the Company's challenge to the sufficiency of the evidence to support the finding that its refusal to hire a significant number of the former employees was motivated by antiunion animus. This finding is supported by, *inter alia,* evidence of statements by Stanley Friedman, who the ALJ permissibly found was the hotel's general manager, based on Friedman's having been told by the Company's principal that the hotel was to be "[his] baby" and warranted his full-time commitment. The evidence of Friedman's statements included testimony by Bruce Behrins and Christien Ducker, who had been, respectively, the operator and manager of the hotel during its receivership. Behrins testified that Friedman discussed with him terminating employees because of "the inability of the hotel to survive economically because of the Union." Ducker testified that after she had interviewed a former employee, she informed Friedman that the applicant "was excellent and she was good for [the] front desk manager position, but she was [a] union delegate. And Mr. Friedman said that that settled it, that he wasn't going to hire anybody from the union." The ALJ found these witnesses credible and the Board found no basis for overturning that evaluation. Courts will not overturn such assessments unless the testimony is " 'hopelessly incredible' " or " 'flatly contradict[s]' either the 'law of nature' or 'undisputed documentary testimony.' " *NLRB v. J. Coty Messenger Service, Inc.,* 763 F.2d 92, 96 (2d Cir.1985) (quoting *NLRB v. American Geri–Care, Inc.,* 697 F.2d 56, 60 (2d Cir.1982), *cert. denied,* 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 807 (1983)). The Company has not come close to meeting that standard here.

■ "In reviewing an order of the Board, we must give considerable deference to the Board's findings of fact and its interpretation of the [National Labor Relations] Act." *Waterbury Hospital v. NLRB,* 950 F.2d 849, 854 (2d Cir.1991). Given the permissible findings and credibility assessments by the ALJ, adopted by the Board, we conclude that the record contains substantial evidence to support the findings that the Company unlawfully discriminated against former employees on the basis of their union membership.

■ Finally, we reject the Company's contention that the Board's order requiring it

to pay former employees at the rates they were paid by Statland should not be enforced. "The NLRB has broad discretion in [remedial] matters and its choice of remedies is subject to limited review.... We will not disturb a remedial order 'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.'" *NLRB v. Katz's Delicatessen*, 80 F.3d 755, 769 (2d Cir.1996) (quoting *Virginia Electric & Power.Co. v. NLRB*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943)). "In fashioning its remedies under the broad provisions of § 10(c) of the Act (29 U.S.C. § 160(c)), the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must ... be given special respect by reviewing courts." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 1939 n. 32, 23 L.Ed.2d 547 (1969).

The Company argues that if it had simply hired the former employees, it would have been free to determine unilaterally the wages it would offer, and it argues that forcing it to pay at the rates paid by Statland is not remedial but impermissibly punitive. For two reasons, we disagree. First, the requirement that the Company pay former employees at the prior rates was plainly intended to be remedial, for it is temporally limited: the Board's order requires payment at the prior rates only until the Company negotiates in good faith with the Union, either to agreement or to impasse.

Second, if the Company had not violated the Act, it would indeed have been free to offer former employees wages at whatever levels it chose, *see, e.g., NLRB v. Burns Intern. Security Services*, 406 U.S. 272, 287–88, 92 S.Ct. 1571, 1582–83, 32 L.Ed.2d 61 (1972); but those applicants, in turn, would have been free to accept or decline those offers, or to negotiate for different wages. If it were possible to determine the terms of employment contracts to which former employees might have agreed, we might prefer an award of backpay at those hypothetical contracts' rates. *Cf. Kallmann v. NLRB*, 640 F.2d 1094, 1103 (9th Cir.1981). But the fact is that the Company made its hiring decisions on a basis that unlawfully discriminated against former employees on the basis of their union membership, and it is hardly clear what terms would have been reached had the Company not so discriminated. "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946). The choice between imposing a predecessor's contract terms and fashioning reasonable hypothetical contract terms that the successor might have obtained had no unfair labor practices occurred presents

> a set of less-than-perfect remedial choices. The [make-whole] remedy ... has the drawback of retroactively imposing on the [wrongdoing successor its predecessor's] terms and conditions of employment ..., but it has the advantage of giving some recompense to the victims ... and preventing the [successor] from enjoying a financial position that is quite possibly more advantageous than the one it would occupy had it behaved lawfully.

*State Distributing Co. v. Teamsters, Chauffeurs, Warehousemen and Helpers Union Local 313*, 282 N.L.R.B. 1048, 1049, 1987 WL 90211 (1987). Because it was the Company's discriminatory acts that created the uncertainty as to what terms and conditions of employment would have been agreed, we conclude that it was within the discretion of the Board to place on the Company the burden of that uncertainty. The Board's decision to give the discrimination victims the benefit of the doubt is remedial rather than punitive.

We have considered all of the Company's arguments in opposition to enforcement and in support of its cross-petition for review and have found them to be without merit. The cross-petition for review is denied. The Board's petition for enforcement is granted.